# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ZYKITA L. HARRIS,

    **Plaintiff,**

  v.                Case No. 18-CV-1930

ANDREW M. SAUL,

    **Defendant.**

# DECISION AND ORDER

## PROCEDURAL HISTORY

Plaintiff Zykita Harris alleges she has been disabled since January 1, 2015, due to depression, lupus, attention-deficit hyperactivity disorder, stomach pain, and body pain. (Tr. 84, 366.) In July 2014 she applied for disability insurance benefits and supplemental security income. (Tr. 330-42.) After her applications were denied initially (Tr. 201-26) and upon reconsideration (Tr. 227-72), a hearing was held before an administrative law judge (ALJ) on June 1, 2017 (Tr. 49-85). On December 20, 2017, the ALJ issued a written decision, concluding that Harris was not disabled. (Tr. 22-44.) The Appeals Council denied Harris's request for review on October 11, 2018. (Tr. 1-4.) This action followed. All parties have

consented to the full jurisdiction of a magistrate judge (ECF Nos. 20, 21), and the matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1571-1576, 416.971-976. The ALJ found that Harris "has not engaged in substantial gainful activity since January 1, 2015, the alleged onset date." (Tr. 27.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The ALJ concluded that Harris "has the following severe impairments: systemic lupus erythematosus, anxiety disorder, and depression." (Tr. 27.)

At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing, and meets the twelve-

month duration requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Harris "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 28.)

Between steps three and four, the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from her impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore*, 743 F.3d at 1121). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-8p. In other words, the RFC determination is a function-by-function assessment of the claimant's "maximum work capability." *Elder v. Asture*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Harris has the RFC

> to perform light work . . . except she is limited to occasional climbing of ladders, ropes, scaffolds, ramps or stairs and occasional balancing, stooping, crouching, kneeling, or crawling; she is limited to unskilled work performing simple, routine, and repetitive tasks; she must be allowed to be off task 10% of the workday in addition to regularly scheduled breaks; she is limited to no interaction with the public and occasional interaction with coworkers including supervisors; and she is limited to work allowing individually performed tasks.

(Tr. 29-30.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1565, 416.965. The ALJ concluded that Harris was "unable to perform any past relevant work." (Tr. 36.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant can do any other work, considering her age, education, work experience, and RFC. At this step, the ALJ concluded that, "[c]onsidering [Harris's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Harris] can perform." (Tr. 37.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE) who testified that a hypothetical individual of Harris's age, education, work experience, and RFC could perform the requirements of a food preparation worker, mail clerk, laundry worker, hand packer, inspector/sorter, and hand stock and material mover. (Tr. 37-38.)

After finding that Harris could perform work in the national economy, the ALJ concluded that Harris "has not been under a disability . . . from January 1, 2015, through the date of this decision." (Tr. 38.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial

evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the Court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, where the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law, the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

## ANALYSIS

Harris contends that: (1) substantial evidence does not support the ALJ's conclusion that Harris would be off task ten percent of the workday; (2) the ALJ mischaracterized and selectively presented the objective mental-health evidence; (3) the ALJ erred in his evaluation of Harris's statements concerning the intensity, persistence,

5

and limiting effects of her symptoms; and (4) the ALJ erred in weighing the opinions of the consultative psychological examiners.

I. **Off-task limitation**

In fashioning the RFC, the ALJ determined that Harris "must be allowed to be off task 10% of the workday in addition to regularly scheduled breaks." (Tr. 29.) Harris argues that the ALJ's off-task limitation is not grounded in the evidence. (ECF No. 13 at 11-15; ECF No. 19 at 2-6.) The court agrees. The ALJ indicated that the off-task allowance was relevant to Harris's "subjective chronic pain symptoms and limitations in attention and concentration imposed by depression and anxiety." (Tr. 36.) However, the ALJ failed to explain how he determined that being allowed to be off task ten percent of an eight-hour workday is sufficient to accommodate those limitations. The off-task limitation, therefore, appears to be arbitrary. *See Garner v. Berryhill*, Civil No. 1:18cv211, 2019 U.S. Dist. LEXIS 48653, at *26-30 (N.D. Ind. Mar. 22, 2019) (remanding where ALJ arbitrarily determined that claimant would be off task five percent of the workday).

The ALJ indicated that the limitation was based on his experience, his review of the entire record, and the testimony of Harris and the VE. (Tr. 36.) The ALJ's stated reliance on "the testimony of vocational experts in thousands of disability cases" (Tr. 36) does not explain how, in *this* case, the ALJ concluded that allowing Harris to be off task ten percent of the day would adequately accommodate her symptoms. In addition to reaching outside the record before him, the ALJ apparently chose the ten percent figure

because that is where "most vocational experts will draw the line between the acceptable and unacceptable" (Tr. 36), not because it was supported by substantial evidence. Moreover, the ALJ did not build an accurate and logical bridge between the evidence that was in the record and his specific off-task limitation. *See Lanigan v. Berryhill*, 865 F.3d 558, 563-64 (7th Cir. 2017) (remanding where the ALJ failed to explain the basis for a ten percent off-task limitation).

The Commissioner's attempts to distinguish this case from *Lanigan* are unpersuasive. The Commissioner argues that, unlike the ALJ in *Lanigan*, the ALJ here explained the basis for his off-task limitation: Harris's pain and difficulty concentrating. (ECF No. 18 at 4.) However, as explained above, the foundation for the ALJ's off-task limitation was unsound. The Commissioner also cites several cases upholding ALJ decisions involving similar off-task limitations. (*See* ECF No. 18 at 4-5.) But those cases either predated *Lanigan* or didn't address its holding.

The court cannot say that the ALJ's error was harmless. As the ALJ accurately noted, Harris reported chronic pain symptoms and limitations in attention and concentration. If these symptoms and limitations caused Harris to be off task more than ten percent of the workday, then she likely would have been found to be disabled at step five of the sequential evaluation process. (*See* Tr. 36 (ALJ acknowledging that most VEs draw the cutoff line at ten percent); Tr. 83 (VE testifying that all work would be precluded if individual were off task fifteen percent of the workday or more).) Accordingly, remand

7

is necessary because the ALJ failed to provide sufficient evidentiary support for his off-task limitation.

## II. Objective medical evidence

With respect to Harris's mental-health impairments, the ALJ determined that Harris was never hospitalized for depression or anxiety, Harris benefited from treatment, Harris's mental-status examinations were generally normal, and, despite having some fluctuations in functioning, Harris's conditions remained relatively stable since her alleged onset date. (Tr. 29, 31-33, 35.) Harris argues that "[t]he ALJ's repeated description of normal [mental status examinations] is misleading." (ECF No. 13 at 17-20; ECF No. 19 at 6-8.) She maintains the ALJ "cherry picked" evidence favorable to his conclusion and largely ignored significantly abnormal findings. The Commissioner argues that "[t]he ALJ sufficiently reviewed the objective medical evidence regarding [Harris's] mental impairments" (ECF No. 18 at 6) and that Harris "fails to explain how the cited medical records warrant additional restrictions beyond the ALJ's already restrictive RFC" (*id.* at 8).

While not required to mention every piece of evidence in the record, the ALJ erred by failing to confront evidence of abnormal mental-status exams and explain why it was rejected. *See Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (citations omitted); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citations omitted). To support his conclusion that Harris had relatively normal mental-assessment findings, the ALJ cited a

December 2014 treatment note wherein Harris was alert, oriented, and cooperative and had an appropriate affect. (Tr. 32; Tr. 956.)[1] It is unclear why the ALJ chose this one-time visit to a cardiologist as a representative example of Harris's overall psychological functioning. Other treatment notes from that same time period describe Harris as exhibiting an anxious mood, having rapid/pressured speech, and expressing impulsivity. (Tr. 901-02.)

The ALJ also omitted from his discussion of the objective medical evidence significant abnormal mental-status findings located within the same records he claimed demonstrated relatively normal findings. For example, when discussing the consultative psychological examination performed by Dr. Jeffrey Polczinski, the ALJ acknowledged Harris's pressured speech, her complaining of racing thoughts, and her needing frequent redirection (Tr. 31-32), but he failed to mention that Harris was difficult to interview, talked rather rapidly, described potentially aggressive behavior, suggested some paranoid ideation, had a limited fund of general information, had limited social judgment, and appeared to have significant difficulties manipulating items in her working memory (Tr. 810-15).

The ALJ likewise failed to mention several abnormal findings noted during Dr. Richard Brigham's consultative psychological examination, including that Harris had pressured speech, had difficulty staying focused, needed to be interrupted frequently,

---

[1] The ALJ did not provide a citation for this note. The parties helpfully filled in the gap.

9

and had marked difficulties with concentration. (*See* Tr. 32 (citing Ex. 18F (Tr. 1019-25)).) Similar issues abound with respect to Harris's treatment records from MindStar Counseling. The ALJ indicated that notes from February 2016 "included appropriate, good insight and judgment, appropriate affect, irritable mood, oriented, intact memory, good attention and concentration, and normal thought content." (Tr. 32 (citing Ex. 33F (Tr. 1795-1826)).) But during other visits in early 2016 Harris raised her voice and swore when discussing her conditions and medical doctors, needed frequent redirection, and presented with a depressed affect. (*See* Tr. 1802, 1807, 1810, 1826.)

The record contains other evidence of abnormal mental-status findings that the ALJ never discussed. For example, in March 2015 Harris presented with an anxious mood, an inappropriate affect, delayed speech, and inappropriate judgment. (Tr. 916.) Following Harris's consultative physical exam in July 2015, Dr. Daryl J. Melzer concluded that Harris's anxiety was "a major issue" (Tr. 1018), and, during that examination, Harris moved about the room rapidly (Tr. 1017). Harris exhibited agitated motor activity during a mental-status exam in November 2015, and the provider noted that Harris was "easily angered by the unfairness and poor behavior of others." (Tr. 1169.) At the cardiology clinic a few days later, the nurse indicated that Harris was a "very anxious individual" and that "it is not easy to talk to her." (Tr. 1130.) Harris demonstrated an inappropriate attitude and jumped from topic to topic during a medical appointment in April 2016. (Tr. 1768.) Throughout 2016, Harris's physician frequently noted that Harris had an anxious

or depressed mood and affect. (*See* Tr. 1307, 1335, 1404, 1435, 1492.) A mental-status exam in July 2016 included the following findings: a high to moderate level of distress, avoided eye contact, gestures, restless, depressed, irritable, anxious, grief, guilt, shame, tangential thought process, loud and animated speech, fair to poor insight, fair to poor judgment, and lack of motivation. (Tr. 1272.)

Overall, the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion that Harris's mental-status findings were generally normal. The ALJ largely discussed only those records that supported his conclusion to the exclusion of contradictory medical evidence. While the ALJ was not required to discuss every piece of evidence in the record, he erred in failing to confront significant evidence of abnormal mental-status findings and explain why it was rejected.

Harris also argues that the ALJ erred in concluding that she responded well to treatment and that her mental-health conditions remained relatively stable. (ECF No. 13 at 21; ECF No. 19 at 8-9.) The Commissioner did not respond to this argument. (*See* ECF No. 18 at 6-8.) Thus, he has waived his right to do so. *See Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 (E.D. Wis. 2004) (citing *Patterson v. Chater*, 978 F. Supp. 514, 519 (S.D.N.Y. 1997)).

Waiver aside, the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion. He did not cite any specific medical records supporting his findings that Harris responded well to treatment and that Harris's mental-health

impairments were stable. Rather, he cited entire exhibits, including one that contains nearly 500 pages of records. (*See* Tr. 29 (citing Ex. 31F (Tr. 1287-1767) and Ex. 33F (Tr. 1795-1826)); Tr. 32 (citing Ex. 8F (Tr. 810-16), Ex. 14F (Tr. 887-953), Ex. 18F (Tr. 1019-26), and Ex. 33F); Tr. 33 (citing Ex. 33F); Tr. 35.) The Commissioner has not scoured those records to find support for the ALJ's findings, and neither will the court. Nevertheless, a brief review of those records reveals that Harris's mental-health impairments were often characterized as "uncontrolled" (Tr. 1335, 1404, 1436, 1492), and it appears only one record described Harris's anxiety as "stable" (Tr. 1676). In fact, mental-status exams consistently showed fluctuating symptoms and adverse findings. (*See* Tr. 810-15, 902, 916, 920, 924, 1018, 1019-25, 1129, 1169, 1272, 1306, 1335, 1404, 1422, 1435, 1492, 1768, 1802, 1807, 1810, 1820, 1825.)

As will be explained below, the ALJ's selective presentation of the objective medical evidence impacted his evaluation of Harris's subjective complaints and the medical opinion evidence. Remand, therefore, is required.

**III. Symptom evaluation**

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p; *see also* 20 C.F.R. §§ 404.1529, 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be

expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

Harris alleged that she has been unable to work since January 1, 2015, due to depression, lupus, ADHD, stomach pain, and body pain. (Tr. 366.) She reported that her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. (Tr. 382.) Regarding her mental impairments, Harris testified to having daily panic attacks, difficulty concentrating and focusing, difficulty getting along with others, anger issues, and issues with depression. (Tr. 54, 67, 73, 77-78.)

The ALJ determined that Harris's "medically determinable impairments could reasonably be expected to produce [her] alleged symptoms; however, [Harris's] statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 30.) With respect to Harris's mental-health symptoms, the ALJ reasoned that "the mental assessment findings have been relatively normal," Harris "has never been

13

hospitalized for depression or anxiety," Harris "has responded well to medication," and, despite "some fluctuations in functioning, [Harris's] condition has remained relatively stable as evidenced by the nearly normal mental status findings." (Tr. 31-32.) The ALJ also did not appear to believe Harris's testimony about why and when she stopped working. (Tr. 32.)

Harris argues that "[t]he ALJ's limited assessment of [her] allegations regarding her mental health symptoms did not meet the requirements of agency policy or build the necessary logical bridge between the evidence and his finding." (ECF No. 13 at 22.) Specifically, she maintains the ALJ omitted significant objective medical evidence that supported her subjective complaints, did not fully consider her hearing testimony, failed to support his inference regarding the lack of hospitalizations, and omitted evidence of daily activities consistent with her allegations. (*Id.* at 22-26; ECF No. 19 at 12-14.) The Commissioner argues that "[s]ubstantial evidence supports the ALJ's finding that [Harris's] statements regarding her subjective symptoms were not entirely consistent with the record evidence." (ECF No. 18 at 12-16.)

In light of the ALJ's selective presentation of the objective medical evidence and failure to address significant evidence consistent with Harris's allegations, remand is required for reevaluation of Harris's subjective symptoms. On remand, the ALJ shall be sure to support his inference regarding Harris never having been hospitalized for mental-

health issues and to fully consider the limitations Harris has performing her daily activities.

IV.  **Opinion evidence**

At the direction of the SSA, Harris was evaluated by two consultative psychological examiners: Dr. Polczinski and Dr. Brigham. Harris first saw Dr. Polczinski, in January 2015. He offered the following opinion concerning Harris's mental capabilities and limitations:

> [Harris] is likely to be able to understand at least simple directions put to her. Her memory, attention, and concentration abilities would be adequate for routine tasks. However, chaotic environments may derail this to a significant degree. Her ability to relate appropriately to coworkers and supervisors may be adversely affected by inability to manage stress and to change. There may be mild-to-moderate impairment in those areas.

(Tr. 814.) Six months later, Harris saw Dr. Brigham. With respect to work capacity, Dr. Brigham opined that Harris would have "marked limitations in her capacity to respond appropriately to supervisors and coworkers," "moderate limitations in her capacity to maintain concentration, attention, and work pace," and "marked limitations in her capacity to withstand routine work stressors." (Tr. 1025.)

The ALJ assigned great weight to Dr. Polczinski's opinions (Tr. 32-33) but little weight to Dr. Brigham's (Tr. 35). The ALJ determined that Dr. Polczinski's opinions were supported by evidence showing that Harris has never been hospitalized for any mental impairment, Harris had a favorable response to treatment, mental-status exams were relatively normal, and Harris's conditions were relatively stable since the alleged onset

date. (Tr. 32-33.) That same evidence, according to the ALJ, was inconsistent with Dr. Brigham's opinions. (Tr. 35.) The ALJ also noted that "Dr. Brigham met with [Harris] only once and relied heavily on his personal observation and [Harris's] subjective report in forming his opinion. (*Id.*)

Harris argues that the ALJ erred in weighing the opinions of Dr. Polczinski and Dr. Brigham. (ECF No. 13 at 26-30; ECF No. 19 at 9-11.) The court agrees. First, the ALJ's selective presentation of the objective medical evidence undermines most of the reasons he offered to differentiate between the conflicting medical opinions. Second, the ALJ illogically subjected Dr. Brigham's opinions to closer scrutiny than Dr. Polczinski's. Both doctors examined Harris only one time, and both doctors appear to have based their opinions on their personable observations and Harris's subjective complaints.[2] Yet, the ALJ cited those factors only against Dr. Brigham. Accordingly, the reasons the ALJ gave for resolving the conflict between the two consultative psychological examiner opinions are inadequate to support an accurate and logical bridge between the evidence and his conclusion.

**CONCLUSION**

Because the ALJ erred in (1) determining that Harris would be off task ten percent of the workday; (2) discussing the objective mental-health evidence; (3) evaluating

---

[2] Indeed, at the reconsideration level, the SSA assigned "other weight" to Dr. Polczinski's opinion because it was based on a one-time meeting and Harris's subjective report. (Tr. 242.) Dr. Willens did not "agree[] with the opinion of Dr. Polczinski," as the Commissioner suggests (ECF No. 18 at 11-12).

16

Harris's statements concerning the intensity, persistence, and limiting effects of her symptoms; and (4) weighing the opinions of the consultative psychological examiners, the court concludes that it is necessary to remand this matter to the Commissioner for reconsideration of the ALJ's RFC assessment and, potentially, his step-five finding.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and this matter is **remanded** for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 15th day of January, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge